# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| THERESA SWEET, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ELISABETH DEVOS, in her official capacity<br>as Secretary of Education, and the UNITED<br>STATES DEPARTMENT OF EDUCATION<br><br>                    Defendants. | No. 3:19-cv-03674-WHA |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants hereby respond to Plaintiffs' First Set of Interrogatories (the "Interrogatories"), served on November 6, 2020. Defendants reserve the right to supplement or amend their responses should additional or different information become available.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Defendants object to the definition of "Department" in Plaintiffs' Definition 4 as overly broad and, thus, not proportional to the needs of the case, insofar as it purports to include offices beyond those specified in the Court's order authorizing discovery, *i.e.*, "the offices of Federal Student Aid, Postsecondary Education, and Career, Technical, and Adult Education within the Office of the Under Secretary." Order Denying Class Settlement, to Resume Discovery, and to Show Cause at 16, ECF No. 146 ("Discovery Order"). Unless otherwise specified in response to specific requests, Defendants will respond on behalf of the two specific offices identified in the Discovery Order.

1

2.      Defendants object to Plaintiffs' Definition 13 as unduly burdensome and, thus, not proportional to the needs of the case, to the extent that it includes "all physical forms" in the definition of "documents."   Due to various restrictions associated with the current Covid-19 pandemic, Defendants are not easily able to search the physical offices of the relevant custodians for hard copy files.   In light of the current pandemic climate, Defendants will not undertake searches to provide hard copies of documents or information in response to these Interrogatories.

3.      Defendants object to Plaintiffs' Definition 14 as vague and overly broad to the extent that it defines the term "Communication" to include "oral" communications.   Oral communications are not documents or tangible things within the scope of Federal Rule of Civil Procedure 33.  Defendants will limit their searches and responses to non-privileged documents and tangible things in response to these Interrogatories.

## **RESPONSES AND OBJECTIONS**

**Interrogatory No. 1**

State the name and address of each person answering these interrogatories and their official position or relationship with the Department of Education.

**Response:**

Colleen M. Nevin, Director, Borrower Defense Unit, Federal Student Aid, US Department of Education**,** 400 Maryland Ave., SW, Washington. DC 20202.

Brian P. Siegel, Assistant General Counsel, Division of Postsecondary Education, Office of the General Counsel, US Department of Education, 400 Maryland Ave., SW, Washington, D.C. 20202.

Tara Marini, Director of Data Request and Fulfillment, Federal Student Aid, US Department of Education, 400 Maryland Ave., SW, Washington, DC 20202.

**Interrogatory No. 2**

Identify every person who has knowledge of the facts and circumstances alleged in the Complaint in this Action and, for each person identified, describe with specificity each person's knowledge.

 **Objections:**  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16.  The Court authorized discovery into these limited topics only, not all aspects of Plaintiffs' 61-page, 404-pargaraph Complaint.  Indeed, at least two of the topics identified by the Court (those relating to the Department's recent denial of applications) are not addressed in, and beyond the scope of, Plaintiffs' Complaint.

 As set forth below, Defendants identify the individuals with knowledge of the topics identified in the Court's Discovery Order and the general parameters of that knowledge. Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).  The one narrow exception, as noted below, is "the form of denial issued before this suit and under the previous administration."  Discovery Order at 16.

**Response:**  Defendants have identified the following individuals with relevant knowledge:

Vanessa Santos – the form of denial issued before this suit and under the previous administration

Colleen Nevin – borrower defense processes and decisions

Jim Manning – borrower defense policy and processes

Wayne Johnson – borrower defense policy and processes

Diane Jones – borrower defense policy

Robert Eitel - borrower defense policy

Nathan Bailey - borrower defense policy

Justin Riemer – borrower defense policies and processes

Robin Minor – borrower defense policies and processes

Frank Curran – borrower defense policies and processes

Julian Schmoke – borrower defense policies and processes

Sarah Hayhurst – borrower defense policies and processes

Kathleen Smith – borrower defense policies and processes

Caroline Hong – borrower defense policies and processes

Brian Siegel – borrower defense policies and processes

Ian Foss – borrower defense policies and processes

Jeff Appel (deceased) – borrower defense policies

Chad Schrecengost– borrower defense processes and decisions

Charlotta Hornig – borrower defense processes and decisions

Borrower Defense Unit Career Staff – borrower defense processes and decisions

**Interrogatory No. 3**

Provide a list of the schools for which borrower defense applications have been decided favorably from June 2018 through the present and the number of applications for each school, including the "step one" and "step two" determinations (*see* Jones Dec., ECF No. 56-3 ¶ 24), and whether the claims have been noticed, or have been granted internally but have not yet been noticed to borrowers.

**Objections**:  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16. Defendants further object to the request as ambiguous and unduly burdensome to the extent the first clause seeks information about certain "schools," while the second clause seeks additional types of information about particular claims and individual borrower defense applicants.

**Response:**  During the relevant period, Defendants approved borrower defense applications from students who attended Corinthian Colleges, Inc. and ITT Educational Services, Inc.  Defendants intend to supplement this response with a chart that includes case-level data from the borrower defense system that demonstrates other relevant case characteristics, including the system dates, if available, of when the application was decided, when cases were populated with a relief percentage, and when the borrower notification occurred.

**Interrogatory No. 4**

Identify the person or persons who "tabled" Enforcement's request for approval to hire "several additional attorneys" for BDU.  Nevin Dec. ¶ 21 (ECF No. 56-4).

**Objections**:  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form

denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  As stated in the declaration to which Plaintiffs cite, the referenced request for additional staffing was "tabled pending the transition to the new administration in January 2017," more than two years before Plaintiffs filed their complaint and more than a year before the eighteen-month delay challenged in this lawsuit began. The mere fact that a topic is referenced in the declarations Defendants submitted as part of the administrative record in this case does not make it relevant to the Court's Discovery Order, which, as relevant to this request, addresses only the extent to which the eighteen-month delay was "actually caused or justified" by "the difficulty of reviewing borrower-defense applications"—not any topic that in any way relates to the case.

Because this request seeks information that is plainly not relevant based to the limited discovery that has been authorized and, thus, disproportionate to the needs of the case, Defendants will not respond to Interrogatory 4.

**Interrogatory No. 5**

Identify how and by whom both the "request" for approval to hire "several additional attorneys" for BDU and its "tabl[ing]" were communicated, including by identifying documents reflecting both the "request" and its "tabl[ing]."  Nevin Dec. ¶ 21 (ECF No. 56-4).

**Objections:**  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form

denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16.  As stated in the declaration to which Plaintiffs cite, the referenced request for additional staffing was "tabled pending the transition to the new administration in January 2017," more than two years before Plaintiffs filed their complaint and more than a year before the eighteen-month delay challenged in this lawsuit began. The mere fact that a topic is referenced in the declarations Defendants submitted as part of the administrative record in this case does not make it relevant to the Court's Discovery Order, which, as relevant to this request, addresses only the extent to which the eighteen-month delay was "actually caused or justified" by "the difficulty of reviewing borrower-defense applications"—not any topic that in any way relates to the case.

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71; to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege; and to the extent it seeks "communications," production of which is unduly burdensome and disproportionate to the needs of this case for the reasons stated in Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production Documents ("RFPD Responses"), which were served contemporaneously with these responses and objections and are incorporated here by reference.  As stated in those objections, Defendants will not produce any communications, nor any documents that do not pertain to the limited subject

matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents.

Because this request seeks information that is plainly not relevant based on the limited discovery that has been authorized and, thus, disproportionate to the needs of the case, Defendants will not respond to Interrogatory 5.

**Interrogatory No. 6**

Identify the person or persons from whom BDU was "given authority to increase [the] contractor staff" in 2018.  Nevin Dec. ¶ 23 (ECF No. 56-4).

**Response:**   Julian Schmoke, then Chief Enforcement Officer, communicated to the Director of the Borrower Defense Unit, Colleen Nevin, that the Borrower Defense Unit could increase the number of contractor attorneys.  On information and belief, Mr. Schmoke received permission to hire the additional contractors from James Manning, then Acting Chief Operating Officer for Federal Student Aid.

**Interrogatory No. 7**

Identify how and by whom the "authority to increase [the] contractor staff" of BDU in 2018 was communicated, including by identifying documents relating to the decision to give said "authority."  Nevin Dec. ¶ 23 (ECF No. 56-4).

**Objections:**   Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case to the extent it seeks information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to

findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16.

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71; to the extent it seeks documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege; and to the extent it seeks "communications," production of which is unduly burdensome and disproportionate to the needs of this case for the reasons stated in Defendants' RFPD Responses, which were served contemporaneously with these responses and objections and are incorporated here by reference. As stated in those responses and objections, Defendants will not produce any communications, nor any documents that do not pertain to the limited subject matter identified in the Court's Discovery Order, documents that are already in Plaintiffs' possession, or privileged documents. To the extent Plaintiffs request that Defendants identify particular documents, Defendants refer Plaintiffs to their RFPD Responses and forthcoming production of documents.

**Response:** Julian Schmoke, then Chief Enforcement Officer, communicated to the Director of the Borrower Defense Unit, Colleen Nevin, that the Borrower Defense Unit could increase the number of contractor attorneys. On information and belief, Mr. Schmoke received permission to hire the additional contractors from James Manning, then Acting Chief Operating Officer for Federal Student Aid. The Defendants have not, at this time, identified any documents responsive to this Request.

**Interrogatory No. 8**

Explain any calculations made by or on behalf of the BDU pertaining to the number of reviewing attorneys (including law clerks, full-time attorneys, part-time attorneys, and/or contractors) needed

to review pending borrower applications, including any metrics pertaining to the aggregate or average amount of time review attorneys are expected to take per application, including by identifying how many individuals working how many hours are necessary to "adjudicate[] on the merits an average of close to 1000 applications a week."  Nevin Dec. ¶ 67 (ECF No. 56-4).

**Objections**: Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16.  Defendants further object to the request to "identify[] how many individuals working how many hours are necessary to 'adjudicate[ ] on the merits an average of close to 1000 applications a week,'" as vague and ambiguous to the extent it is premised on the improper assumption that reviewing attorneys in the Borrower Defense Unit would work exclusively on adjudications over the week and that the amount of time needed to adjudicate a particular number of applications per week would not change over time.

**Response:**  Borrower defense applications vary in complexity and the amount of evidence included and, therefore, vary in the amount of time needed to review and adjudicate the application. In general, adjudications have increased in complexity over time, due in part to changing borrower defense regulations and the increased prevalence of applications with claims that are subject to more than one regulation.

Additionally, the Borrower Defense Unit does not adjudicate any particular claim until it creates a review protocol for that type of claim or determines that an already-established protocol is appropriate.  The metrics described below regarding the time it takes to adjudicate an application do not include the time required to develop such review protocols, which involves a review of common evidence relating to a specific school or school group. Defendants do not have metrics for the amount of time that it takes to develop a review protocol because the time involved varies depending on the volume of evidence.

Prior to around the late spring or early summer of 2019, the Borrower Defense Unit did not have any metrics regarding the amount of time needed to adjudicate a borrower defense application. The Nevin Declaration stated that the Department was adjudicating an average of 1,000 applications per week in November 2019.  That was based on the fact that at the time the Borrower Defense Unit was focusing its review on (1) borrower defense applications by former Corinthian Colleges, Inc. ("Corinthian") students with previously established protocols (*i.e.*, protocols regarding misrepresentations regarding job placement rates, employment prospects, and transferability of credits); and (2) borrower defense applications that did not relate to any common evidence in the Borrower Defense Unit's possession that would support the borrower's claims. Based on pilot testing in the late spring or early summer of 2019, Federal Student Aid estimated that those cases could be adjudicated by a fully trained and proficient Borrower Defense Unit attorney (including law clerks and contract attorneys) at an average rate of about 5 applications per hour.  This rate assumes that complex cases or those where the borrower provided a substantial amount of evidence will be set aside for further review, and so such cases are not included in that metric.  Additionally, this estimated pace of adjudication does not include any time relating to the

drafting of a decision notice—that work is performed by others in Federal Student Aid using data entered by the Borrower Defense Unit staff member at the adjudication stage.

The applications currently pending adjudication, to a significant degree, have been initially determined to potentially be supported to some degree by common evidence or to have substantial evidence attached by the individual borrower (*i.e.*, cases where the borrower's evidence would potentially establish a borrower defense by a preponderance of the evidence) or both. The Borrower Defense Unit has not yet determined an average time for adjudication of such cases.

**Interrogatory No. 9**

State how many individuals, including contractors, were retained by or for the BDU to review borrower defense claims, for each month between and including January 2017 through the present.

**Objections:**  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  Defendants further object to this request as overly broad and unduly burdensome to the extent it requests data for each and every month over a period of nearly four years.  Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:**   During the relevant time period, the BDU has employed staff numbering between, at various points, 5 and 60 employees and varying levels of contractor support. Defendants intend to supplement this response with a chart that shows the number of career staff and contractors working for FSA in the Borrower Defense Unit during each month of the relevant time period.

## Interrogatory No. 10

Identify which schools have been "give[n] notice when their students file borrower defense claims," the policies and procedures governing such notices, and the timing, content and form of such notices.  *See* Nevin Dec. ¶ 37 (ECF No. 56-4); Foss Dec. ¶ 37 (ECF No. 56-4).

**Response:**   The following schools have received notices that their students have filed borrower defense claims:  University of Phoenix; DeVry; Charlotte School of Law; and Ashford University.   Regarding the "policies and procedures governing such notices, and the timing, content and form of such notices, " Defendants intend to supplement this response with a forthcoming production of the following categories of documents: (1) the initial letters sent to schools thus far requesting information and advising schools that they would be receiving notice of individual borrower applications against them, (2) the template for the form letters sent to the school with the individual borrower application, and (3) documents describing the protocol and procedures for sending initial and form letters to schools that were in effect at the time that the notices were sent.

## Interrogatory No. 11

Identify and explain the "criteria for approval" identified in Nevin Dec. ¶ 39 (ECF No. 56-4), and explain how it was developed, when, by whom, and what records exist of the policies and procedures regarding approvals.

**Objections:**   Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16.  Defendants further object to this request to the extent it seeks information protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege.   To the extent Plaintiffs request that Defendants identify particular documents, Defendants refer Plaintiffs to their RFPD Responses and forthcoming production of documents.

**Response:**   The criteria for approval depend on the nature of the claim, the applicable regulation (and, where the applicable regulation is the 1995 regulation, applicable state law), and whether any elements of the claim are established by common evidence.  Defendants intend to supplement this response with a forthcoming production of the following documents, reflecting the "criteria for approval" and containing information responsive to Plaintiffs' Interrogatory No. 11 regarding "policies and procedures regarding approvals" for approvals issued to date:  (1) school-specific memos regarding the scope of evidence considered (specifically, for Corinthians cases alleging misrepresentations regarding employment prospects and transferability of credits and for ITT Educational Services, Inc. cases alleging misrepresentations regarding employment prospects in California) and (2) related adjudication protocols.

These are the only approval criteria that currently exist for approvals that have been issued to date.  The Borrower Defense Unit is, however, continuing to develop additional categories of claims and the criteria for approval of claims as appropriate.

**Interrogatory No. 12**

Describe the training provided to individuals, including contractors, tasked with adjudicating borrower defense claims, including by identifying who conducted the training and what materials were used and consulted.

**Objections:**   Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  In particular, Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).  To the extent Plaintiffs request that Defendants identify particular documents, Defendants refer Plaintiffs to their RFPD Responses and forthcoming production of documents.

**Response:**    The trainings provided to adjudicators and the materials consulted have evolved over time along with the types of cases adjudicated by the Borrower Defense Unit.

As of early 2018, the staff adjudicating borrower defense applications were individuals in the Department's Investigations Unit and contractors and career attorneys in the Borrower Defense Unit.  They were trained by experienced career attorneys in the Borrower Defense Unit.  At that time, borrower defense claims submitted by former Corinthian students that relied on allegations regarding misrepresented job placement rates were primarily adjudicated by contractors.  All claims not involving Corinthian, and where there was no supporting evidence (either common evidence in the Borrower Defense Unit's possession or evidence included with the borrower's application) that could potentially lead to an approval, were adjudicated by the employees of Federal Student Aid's Investigations Unit and the Borrower Defense Unit.  All adjudicators working on the non-Corinthian claims were attorneys and were trained to set a case aside for further review if they identified evidence that could potentially support an approval.  At that time, trainings were conducted using written protocols and included training regarding how to draft a denial letter based on the materials submitted by an individual borrower.

In mid-2018, the Borrower Defense Unit trained contract attorneys on how to adjudicate claims involving no supporting evidence (either common evidence in the Borrower Defense Unit's possession or evidence included with the borrower's application) that could potentially lead to an approval.  Borrower Defense Unit career attorneys or an attorney in the Investigations Unit conducted quality control reviews of all of the draft letters written by contract attorneys.  After reviewing early letter drafts prepared by the contract attorneys, the Borrower Defense Unit conducted follow-up trainings to improve the quality of the draft denial letters around the end of 2018.  Trainings consisted of providing adjudicators with a template for denial letters and discussing how to complete the letter based on the individual allegations in each borrower's application.

16

Since the fall of 2019, adjudicators have included term-employee attorneys and career attorneys in the Borrower Defense Unit (and from this time until around Summer 2020, contractors were also involved in adjudications), who were trained by career attorneys in the Borrower Defense Unit.  Adjudicators are trained to identify types of claims, to determine whether an individual borrower's allegations state a legal claim, and to review any materials provided by the borrower to assess whether there is evidence that potentially would support approval of the borrower's claim(s).  They also are trained on specific review protocols and the use of the borrower defense system.  The initial week-long training sessions for new members of the Borrower Defense Unit are followed by a probationary period and then supplemented over time with refreshers and additional training sessions.  Borrower Defense Unit career attorneys also conduct training sessions when new protocols are developed.

Defendants intend to supplement this response with a forthcoming production of the written training materials described in this response.

**Interrogatory No. 13**

Describe the policies and procedures regarding evaluation of the work of individuals who performed borrower defense claim adjudications, including identifying who reviewed the work, how often, based on what metrics, and how their evaluations were recorded, used, and communicated.

**Objections**:  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the

17

Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  In particular, Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:**  As a quality control measure, all adjudicators have all or some portion of their adjudications reviewed for accuracy ("QC'd").  During the probationary period for new adjudicators, 100% of their adjudications are QC'd.  An adjudicator must then meet certain metrics before a lesser percentage of his/her adjudications are reviewed.  Additionally, once an adjudicator has demonstrated his/her proficiency, all of that adjudicator's cases go into a quality pool and a random sample of those adjudications are QC'd.

The percentage QC'd pursuant to this random sample has generally been 20%, with the exception of a brief period roughly between mid-2018 and end of 2018 when only certain Corinthian job placement rate claims were being adjudicated and placed in a quality pool for 5%-QC (all other adjudications were being 100%-QC'd).  On information and belief, most or all of the Corinthian job placement rate claims that were adjudicated during that time were later pooled and subjected to a subsequent random quality control sampling at 20% before the cases were processed.

Generally, when an adjudicator conducts adjudications under a new protocol (for a new category of claims or for a claim involving some additional complexity), that adjudicator is placed back on 100%-QC for that protocol, meaning that 100% of such adjudications are reviewed for

accuracy.  If an adjudicator is found to be committing too many errors, they receive supplemental training to ensure that any issues relating to errors are resolved.

QCs are conducted by adjudicators found to have excelled at claim review generally or on a specific adjudication protocol. The Borrower Defense Unit has developed a "QC team" specifically for that purpose.  The Director of the Borrower Defense Unit, Colleen Nevin, reviews weekly reports on error rates for each adjudicator to identify trends and the need for supplemental training.

**Interrogatory No. 14**

Identify who in "Department leadership convened a Borrower Defense Review Panel," and explain the reasoning behind the formation of the panel.  Nevin Dec. ¶ 55 (ECF No. 56-4).

**Objections:**  Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  As stated in the declaration to which Plaintiffs cite, the referenced "Borrower Defense Review Panel" was convened in "March 2017," more than two years before Plaintiffs filed their complaint and more than a year before the eighteen-month delay challenged in this lawsuit began.  This request plainly does not seek information that is relevant to any topic set forth in the Court's Discovery Order and is, thus, disproportionate to the needs of the case.

Defendants further object to this request to the extent it seeks information or documents that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it seeks information or documents protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege.   Consistent with these objections, Defendants will not respond to Interrogatory 14.

**Interrogatory No. 15**

Identify all sources of information "otherwise available to the Department" used in "step one" of borrower defense adjudications (Jones Dec. ¶ 24 (ECF No. 56-3)), and explain any hierarchy or policies regarding the usage of such documentation.

**Objections:**   Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."   *See* Discovery Order at 16.   In particular, Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:   May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

Moreover, Defendants object to the request in general as vague, ambiguous, and overly broad.  The declaration from which this request quotes states that the "Department's consideration

of a borrower's application" includes, first, a "determination of whether the borrower has submitted a borrower defense claim supported by evidence submitted by the borrower or otherwise available to the Department in accordance with the applicable standard."  The term "hierarchy," as used in this request, is vague and undefined, and Plaintiffs' use of the phrase "such documentation" is ambiguous because neither the first clause of this request, nor the declaration on which Plaintiffs rely to formulate this request, uses the term "documentation."  Nor does the cited declaration state that any "information" is "used in 'step one' of borrower defense adjudications"; rather, the declaration refers to the Department's review of the evidence available to it, in accordance with the applicable standard, as part of the Department's consideration of a borrower defense claim.  Defendants describe below the sources of information that they consider as part of the borrower defense review process, but otherwise object to this request as overly broad, unduly burdensome, and disproportionate to the needs of the case.

**Response:**   The potential sources of information available to the Borrower Defense Unit in its consideration of borrower defense applications vary by school, borrowers, time periods, and allegations.  Notwithstanding Defendants' objections, potential sources of information that are or may become available to the Department include, but are not limited to, the following:

- information and materials in the Department's possession relating to its oversight of schools or other work relating to schools;

- information and materials provided by borrowers with their applications;

- information and materials that individual schools share with the Department;

- information and materials shared by school accreditors with the Department;

- information and materials shared by other federal, state, or local enforcement agencies with the Department;

- information and materials available on school websites;

- publicly available information and materials associated with litigation, settlements, or consent judgments;

- relevant publicly available information and materials on the internet; and

- information and materials from public Congressional testimony or investigations.

**Interrogatory No. 16**

Identify the individuals who drafted and approved form Denials A, B, C, and D, and explain the process for review and approval of the letters. *See* ECF No. 116.

**Objections**: Defendants object to this request to the extent it seeks information protected by privilege, including but not limited to the attorney-client privilege and the deliberative process privilege.

**Response:** Individuals in the Department's Federal Student Aid office consulted with staff in the Office of the General Counsel and other offices in the Department on the contents and form of various drafts of the letters referenced in this request, as well as on the availability of data in the Borrower Defense Unit's platform to populate certain aspects of standard, automated templates. FSA then provided draft letters to Department leadership and the Office of the General Counsel for review. Based on Defendants' current inquiry, Defendants lack knowledge or information to provide a further response to this interrogatory. Defendants will continue to conduct a reasonable inquiry and will supplement this response to the extent there is further information to provide.

**Interrogatory No. 17**

Explain the reasoning behind the determination that an application is "from borrowers who did not provide any evidence and who attended schools for which BDU is not aware of evidence that

22

would support an approval of applications," and identify by borrower and school the denials that fall into this category.  Nevin Dec. ¶ 66 (ECF No. 56-4).

**Objections:**   Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials."  *See* Discovery Order at 16.  In particular, Plaintiffs' request is overly broad and unduly burdensome to the extent it requests that Defendants provide identifying information for each and every borrower who "did not provide any evidence and who attended schools for which BDU is not aware of evidence that would support an approval of applications." That population includes thousands of borrowers, and it would be unduly burdensome, beyond the scope of the limited discovery the Court has authorized, and disproportionate to the needs of the case for Defendants to provide such information.

Defendants describe the general reasoning supporting its determinations below, and otherwise object to this request.  Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:**   In general, the "reasoning behind" a determination that an application is from a borrower who "did not provide any evidence" or who attended a school "for which BDU is not

aware of evidence that would support an approval of applications" speaks for itself. Each application for a borrower defense discharge is reviewed individually, along with any documents provided by the borrower and in the context of any common evidence in the Department's possession. Applications that are supported by common evidence, as well as those that are not supported by common evidence but which include evidence that might reasonably support approval, are set aside for further consideration by a career attorney in the Borrower Defense Unit. Claims that are not supported by evidence are ineligible for approval.

Defendants intend to supplement this response with a forthcoming production of documents, including: (1) school-specific memos regarding the scope of evidence considered and (2) related adjudication protocols.

**Interrogatory No. 18**

Identify all documents drafted, consulted, or otherwise involved in recommending and approving the denial of borrower defense applications.

**Objections:** Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16. In particular, the request's use of the phrases "requests" and "otherwise involved" is overly broad and, combined with the request for "[a]ll documents," potentially encompasses every writing in the possession, custody, or control of

the Borrower Defense Unit.  Defendants restrict their response to the topics identified in the

Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25,

2018 (on or about the date on which the eighteen-month delay referenced in the Court's second

topic began) and October 19, 2020 (the date of the Discovery Order).

Defendants further object to this request to the extent it seeks information or documents

that are already included in the administrative record, *see* ECF Nos. 56, 71, and to the extent it

seeks documents protected by privilege, including but not limited to the attorney-client privilege

and the deliberative process privilege.  As stated in Defendants' RFPD Responses, which were

served contemporaneously with these responses and objections and are incorporated here by

reference, Defendants will not produce any documents that do not pertain to the limited subject

matter identified in the Court's Discovery Order, documents that are already in Plaintiffs'

possession, or privileged documents.  To the extent Plaintiffs request that Defendants identify

particular documents, Defendants refer Plaintiffs to their RFPD Responses and forthcoming

production of documents.

**Response:**  Notwithstanding Defendants' objections, Defendants intend to produce the

following documents responsive to Plaintiffs' Interrogatory No. 18: (1) school-specific memos

regarding the scope of evidence considered and (2) related adjudication protocols.

**Interrogatory No. 19**

State how many and which class members have received a Form A, B, C, or D denial notice

relating to loans associated with attendance at Schools subject to findings of misconduct by the

Department or any other state or federal body, agency, or court, including but not limited to the

Schools listed below, and Schools owned or operated by any entity listed below:

a.  Any School operated by Alta Colleges, Inc., including but not limited to Westwood
    College;

b. Any School operated by Apollo Education Group/Zovio, including but not limited to the University of Phoenix;

c. Any School operated by Bridgepoint Education, Inc., including but not limited to Ashford University and University of the Rockies;

d. Any School operated by Career Education Corp. (CEC), including but not limited to American InterContinental University, Briarcliffe College, Brooks Institute, Brooks College, Colorado Technical University, Harrington College of Design, International Academy of Design and Technology, Le Cordon Blue, Missouri College, Sanford-Brown College, Sanford-Brown Institute, Katherine Gibbs, Western School of Health and Business, Pittsburgh Career Institute, Collins College, Brown College, Missouri College, and California Culinary Academy;

e. Any School operated by Corinthian Colleges, Inc., including but not limited to Heald, WyoTech, and Everest;

f. Any School operated by Delta CEC, including but not limited to McCann, Miller-Motte Technical College, Miami Jacobs, and Academy Court Reporting;

g. Any School operated by DeVry, including but not limited to DeVry University, DeVry Institute of Technology, DeVry College of Technology, and Keller Graduate School of Management;

h. Any School operated by Education Corporation of America (ECA), including but not limited to Brightwood College, Brightwood Career Institute, Virginia College, New England College of Business, Ecotech Institute, and Golf Academy of America;

i. Any School operated by Education Management Corporation/Dream Center Education Holdings, including but not limited to The Art Institutes, Argosy University, Brown Mackie College, South University, and Western State University College of Law;

j. Any School operated by Infilaw, including but not limited to Charlotte School of Law, Florida Coastal School of Law, and Arizona Summit Law School;

k. Any School operated by ITT Technical Institute;

l. Any School operated by JTC Education Inc./JTC Education Holdings, including but not limited to Gwinnett College, MedTech College, and Radians College;

m. Any School operated by Kaplan Higher Education/Kaplan Inc./Graham Holdings, including but not limited to Kaplan University, Kaplan College, Kaplan Career Institute, and CHI Institute;

n. Any School operated by Premier Education Group, including but not limited to Micropower Career Institute, Institute for Health Education (IHE), Salter College, Salter School, Salter School of Nursing & Allied Health, Branford Hall Career Institute, Harris School of Business, and American College for Medical Careers;

o. Any School operated by Weston Education Inc./Lincoln Educational Services Corp., including but not limited to Lincoln Technical Institute;

p. Any School operated by Wilfred American Educational Corp., including but not limited to Robert Fiance Hair Design and Wilfred Academy of Hair & Beauty Culture;

q. All State Career;

r. ATI Career Center;

s. California College San Diego;

t. Capps College;

u. Concorde Career Colleges;

v. Computer Systems Institute;

w. Denver School of Nursing

x. Driveco CDL Learning Center;

y. Fast Train;

z. Flatiron Computer Coding School;

aa. Fortis College;

bb. Fortis Institute;

cc. Globe University;

dd. Grand Canyon;

ee. Hosanna College of Health;

ff. Independence University;

gg. Marinello School of Beauty;

hh. Minnesota School of Business;

ii.  Saint Paul's School of Nursing;

jj.  Southern Technical College;

kk. Star Career Academy;

ll.  Stevens-Henegar College;

mm.    Sullivan and Cogliano Training Centers;

nn. Technical Career Institute;

oo. Tri-State Business Institute; and

pp. Walden College.

**Objections:**   Defendants object to this request as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of the case in seeking information beyond the scope of the limited discovery the Court has authorized, *i.e.*, "[t]he development and use of the form denial letters," "[t]he extent to which the difficulty of reviewing borrower-defense applications actually caused or justified the Secretary's eighteen-month delay," and "the extent to which the Secretary has denied applications of students who have attended schools subject to findings of misconduct by the Secretary or any other state or federal body or agency, and the rationale underlying those denials." *See* Discovery Order at 16.   In particular, Defendants object to providing a list identifying "which" class members have received denial notices, a population that includes thousands of borrowers.  Plaintiffs' request for such information is beyond the scope of the limited discovery that the Court has authorized, and it is overly broad, unduly burdensome, and disproportionate to the needs of the case.  This request is also overly broad and unduly burdensome in containing 42 discrete subparts.

In addition, Defendants object to the term "findings of misconduct" as vague and ambiguous in failing to specify the standard for which a school should be included on the list for

which plaintiffs request information.  For example, it is not clear whether "findings" refers to evidence of misconduct that a particular entity (such as a state or federal enforcement authority) has gathered or instead to a definitive legal conclusion by such an entity (or by a court or other tribunal) that such misconduct was actually engaged in.  Putting aside the vagueness of the phrase "findings of misconduct," the request is also overly broad in seeking information about such "findings" by "any" state body, federal body, agency, or court, regardless of whether any evidence obtained by such entities was shared with the Borrower Defense Unit or even relevant to the Department's adjudication of borrower defense applications.

Defendants restrict their response to the topics identified in the Court's Discovery order and to the time period relevant to the Court's Discovery Order:  May 25, 2018 (on or about the date on which the eighteen-month delay referenced in the Court's second topic began) and October 19, 2020 (the date of the Discovery Order).

**Response:**   Between December 2019 and September 1, 2020, Defendants denied the borrower defense applications of approximately 118,300 class members; most, if not all, received the referenced form denial letters.  A large number of these denials were issued to applicants who attended the schools listed in this request.  Defendants intend to supplement this response with a chart that includes case-level data from the borrower defense system that demonstrates which class members received each form denial letter and relevant case characteristics, including the date of the letter and school name(s) associated with the borrower's claim.

## SIGNATURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 33(b)(5)

For interrogatory responses:  See the attached certification pages.

Dated:  December 7, 2020                              As to objections,

                                                                         JEFFREY BOSSERT CLARK

Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar # 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

THERESA SWEET, *et al.*,

               Plaintiffs,

     v.

ELISABETH DEVOS, in her official capacity
as Secretary of Education, and the UNITED
STATES DEPARTMENT OF EDUCATION

             Defendants.

No. 3:19-cv-03674-WHA

### INTERROGATORY CERTIFICATION

I, Brian P. Siegel, Assistant General Counsel, Division of Postsecondary Education, Office of the General Counsel, United States Department of Education, certify under penalty of perjury, that the foregoing responses to Plaintiff's Interrogatories No. 1, No. 2 and No. 16 are true and correct to the best of my belief, knowledge, information, understanding and recollection.

Dated:  December 7, 2020

Respectfully submitted,

*Brian P. Siegel*
_____

Assistant General Counsel

Division of Postsecondary Education

Office of the General Counsel

United States Department of Education

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| THERESA SWEET, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ELISABETH DEVOS, in her official capacity<br>as Secretary of Education, and the UNITED<br>STATES DEPARTMENT OF EDUCATION<br><br>                    Defendants. | No. 3:19-cv-03674-WHA |

INTERROGATORY CERTIFICATION

I, Colleen M. Nevin, Director of the Borrower Defense Group, Federal Student Aid, United States Department of Education, certify under penalty of perjury, that the foregoing responses to Plaintiff's Interrogatories No. 6, No.7, No. 8, No. 9, No. 10, No. 11, No. 12, No. 13, No. 15, No. 17, and No. 18 are true and correct to the best of my belief, knowledge, information, understanding and recollection.

Dated:  December 7, 2020

Respectfully submitted,

*Colleen M. Nevin*
_____

Director
Borrower Defense Group
Federal Student Aid
United States Department of Education

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA SWEET, *et al.*, | |
| Plaintiffs, | |
| v. | No. 3:19-cv-03674-WHA |
| ELISABETH DEVOS, in her official capacity as Secretary of Education, and the UNITED STATES DEPARTMENT OF EDUCATION | |
| Defendants. | |

### INTERROGATORY CERTIFICATION

I, Tara Marini, Director of Data Request and Fulfillment, Federal Student Aid,  United

States Department of Education, certify under penalty of perjury, that the foregoing responses to

Plaintiff's Interrogatories No. 3 and No. 19 are true and correct to the best of my belief,

knowledge, information, understanding and recollection.

Dated:  December 7, 2020                          Respectfully submitted,

Tara Marini
Digitally signed by Tara Marini
Date: 2020.12.07 19:45:21 -05'00'

Director

Data Request and Fulfillment

Federal Student Aid

United States Department of Education