1    Jesse Panuccio
     jpanuccio@bsfllp.com
2    BOIES SCHILLER FLEXNER LLP
     401 E. Las Olas Blvd., Ste. 1200
3    Fort Lauderdale, FL  33301
     Telephone: (954) 356-0011
4

5    *Counsel for Elisabeth DeVos*
     *Appearing pursuant to Fed R. Civ. P. 45(f)*
6    *and Civ. L.R. 11-1(a)*

7                     UNITED STATES DISTRICT COURT

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10

11   In re                              | Case No.: MC 21-80075 WHA

12   SUBPOENA SERVED ON FORMER          | **MOTION TO QUASH RULE 45**
     SECRETARY OF EDUCATION             | **SUBPOENA**
13   ELISABETH DEVOS.
                                        | Judge:  Honorable William Alsup
14                                      | Hearing:  May 18, 2021
                                        | Time:  8:00 a.m.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND RESPONDENTS AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that, on May 18, 2021, at 8:00 a.m., or as soon thereafter as counsel may be heard before the Honorable William Alsup, United States District Judge for the Northern District of California, in Courtroom 8 on the 19th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California, purusant to to Fed. R. Civ. P. 45(d)(1) and (d)(3)(A), former Secretary of Education Elisabeth DeVos ("Movant") will move and hereby moves the Court to quash the despoition subpoena served on her by Plaintiffs in *Sweet, et al. v. Cardona, et al.*, 3:19-cv-03674 (N.D. Cal.).[1]  Such a deposition to probe the mental processes of a Cabinet secretary is prohibited under *United States v. Morgan*, 313 U.S. 409, 422 (1941), and the apex doctrine.  *See also In re Dep't of Commerce*, 139 S. Ct. 16, 16-17 (2018) (granting stay of order requiring deposition of Cabinet secretary in Administrative Procedure Act case where extra-record discovery was ordered to probe alleged agency pretext).

Should the Court deny this motion, Movant respectfully requests that the Court stay compliance with the subpoena, and any order compelling a deposition, to permit orderly review at the appellate level.  *See In re United States of America*, 985 F.2d 510, 512  (11th Cir. 1993) (granting mandamus petition after district court denied motion to quash subpoena of FDA commissioner); *In re United States*, 197 F.3d 310, 316  (8th Cir. 1999) (granting mandamus petition after district court denied motion to quash subpoena of Attorney General and Deputy Attorney General); *In re USA*, 624 F.3d 1368, 1377 (11th Cir. 2010) (granting mandamus petition after district court ordered testimony of EPA Administrator); *In re Dep't of Commerce*, 139 S Ct.

---

[1] Movant respectfully maintains that the order transferring this matter to this Court is erroneous, and currently has pending before the U.S. Court of Appeals for the Eleventh Circuit a Petition for a Writ of Mandamus challenging the legality of that order.  Movant files the instant Motion because there is currently in force an order of this Court commanding her to appear and file briefing in this matter. Doc. 30.  By filing this Motion and appearing in this Court pursuant to the Court's order, Movant does not consent to, nor does she waive her right to contest, the jurisdiction of this Court, and she reserves all appellate rights.  *See In re Howmedica Osteonics Corp*, 867 F.3d 390, 411 (3d Cir. 2017) ("Because the District Court clearly and indisputably erred in transferring this case in its entirety to the Northern District of California, we will issue a writ of mandamus vacating the transfer order….").

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA

1    at 16-17 (granting stay pending review of mandamus petition of distirct court order compelling
2    deposition Secretary of Commerce in agency pretext case).

3         Purusant to Civil L.R. 37-1(a), counsel for Movant has conferred with counsel for the
4    parties to this action but was unable to reach a stipulation.

5         This motion is based on this Notice of Motion and Motion, the accompanying
6    Memorandum of Points and Authorities, the accompanying declaration and exhibits, the pleadings
7    and records on file herein, and such other evidence and arguments as may be presented to the Court
8    prior to or at the hearing of this motion.

9

10   Dated: April 20, 2021                      Respectfully submitted,

11                                              /s/  *Jesse Panuccio*
                                                Jesse Panuccio
12                                              Counsel for Elisabeth DeVos

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA

1

**TABLE OF CONTENTS**

2    NOTICE OF MOTION AND MOTION ........................................................................1

3    Introduction..............................................................................................................8

4    Statement of Facts.....................................................................................................9

5    
6        I.      The Court Authorizes Discovery in the *Sweet* Litigation on Specified
                 Topics..........................................................................................................9

7        II.     Touting this Court as Having "Slammed" Secretary DeVos in its Order,
8                Plaintiffs Seek to Depose Her with No Basis for Asserting that She Has
                 Indispensable Knowledge and without Availing themselves of Available
9                Discovery Authorized by the Court, Opportunities to Seek Additional
                 Discovery, and Government Offers of Assistance. ..................................10

10       III.    The Parties Agree that the Southern District of Florida Will Be the Place
11               of Compliance, Secretary DeVos and the Federal Defendants Move to
                 Quash, and Plaintiffs Move to Transfer. ................................................11

12
13   Legal Standard .......................................................................................................14

14   Argument ...............................................................................................................14

15       I.      Plaintiffs' Subpoena Must Be Quashed Under Longstanding Precedent
                 Governing Compelled Testimony of Cabinet-Level Officials...............14

16       II.     Plaintiffs Have Failed to Demonstrate Extraordinary Circumstances
17               under the Apex Doctrine. ......................................................................18

18               1.    Plaintiffs Have Not Demonstrated Extraordinary Circumstances.................18

19               2.    High-ranking Officials Do Not Lose Morgan and Apex Doctrine
20                     Protections Upon Leaving Office..........................................................22

21   CONCLUSION......................................................................................................25

22

23

24

25

26

27

28

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

6

*A.R. v. Dudek*,
2016 WL 3753706 (S.D. Fla. Apr. 8, 2016) ........................................................................ 20, 21

7

*ADT LLC v. Vivint, Inc.*,
2017 WL 5640727 (S.D. Fla. Aug. 31, 2017) ............................................................................ 26

8

9

*Am. Can Co. v. Citrus Feed Co.*,
436 F.2d 1125 (5th Cir. 1971) .................................................................................................... 24

10

11

*Apple Inc. v. Corellium, LLC*,
2020 WL 1849404 (S.D. Fla. Apr. 13, 2020) ............................................................................ 21

12

*Apple, Inc. v. Samsung Elecs. Co.*,
282 F.R.D. 259 (N.D. Cal. 2012) ............................................................................................... 24

13

*Arnold Agency v. W. Va. Lottery Comm'n*,
526 S.E.2d 814 (W. Va. 1999) .................................................................................................... 26

14

15

*Bogan v. City of Boston*,
489 F.3d 417 (1st Cir. 2007) ................................................................................................ 19, 21

16

17

*Buckler v. Israel*,
2014 WL 7777678 (S.D. Fla. Nov. 13, 2014) ........................................................................... 25

18

19

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
2007 WL 205067 (N.D. Cal. 2007) ............................................................................................ 24

20

21

*City of Fort Lauderdale v. Scott*,
2012 WL 760743 (S.D. Fla. Mar. 7, 2012) ........................................................................... 25, 26

22

*Coleman v. Schwarzenegger*,
2008 WL 4300437 (E.D. Cal. Sept. 15, 2008) .......................................................................... 24

23

24

*Dep't of Commerce v. New York*,
139 S. Ct. 2551 (2019) ................................................................................................................ 17

25

26

*Energy Capital Corp. v. United States*,
60 Fed. Cl. 315 (Fed. Cl. 2004) ................................................................................................. 17

27

*Eng v. Cty. of Los Angeles*,
2007 WL 9729101 (C.D. Cal. Apr. 5, 2007) ............................................................................. 22

28

4

*Fed. Deposit Ins. Corp. v. Galan-Alvarez*,
2015 WL 5602342 (D.D.C. Sept. 24, 2015) ............................................................ 25, 26

*First Resort, Inc. v. Herrera*,
2014 WL 589054 (N.D. Cal. Feb. 14, 2014) ................................................................ 18

*Ford Motor Co. v. Edgewood Props., Inc.*,
2011 WL 2517133 (D.N.J. June 23, 2011) .................................................................. 26

*Franklin Sav. Ass'n v. Ryan*,
922 F.2d 209 (4th Cir. 1991) ..................................................................................... 19

*Gauthier v. Union Pac. R. Co.*,
2008 WL 2467016 (E.D. Tex. June 18, 2008) ............................................................ 26

*Gray v. Kohl*,
2008 WL 1803643 (S.D. Fla. Apr. 21, 2008) ............................................................. 24

*Hammer v. Ashcroft*,
570 F.3d 798 (7th Cir. 2009) ..................................................................................... 20

*Hernandez v. Tex. Dep't of Aging & Disability Servs.*,
2011 WL 6300852 (W.D. Tex. Dec. 16, 2011) .......................................................... 20

*Hickey v. N. Broward Hosp. Dist.*,
2014 WL 7495780 (S.D. Fla. Dec. 17, 2014) ............................................................ 21

*Horne v. Sch. Bd. of Miami-Dade Cty.*,
901 So. 2d 238 (Fla. 1st DCA 2005) ......................................................................... 26

*In re Alcatel USA, Inc.*,
11 S.W.3d 173 (Tex. 2000) ........................................................................................ 26

*In re Clinton*,
973 F.3d 106 (D.C. Cir. 2020) ................................................................................... 25

*In re Dep't of Commerce*,
139 S. Ct. 16 (2018) ........................................................................................ 1, 9, 16, 27

*In re FDIC*,
58 F.3d 1055 (5th Cir. 1995) ..................................................................................... 19

*In re Howmedica Osteonics Corp*,
867 F.3d 390 (3d Cir. 2017) ........................................................................................ 1

*In re McCarthy*,
636 F. App'x 142 (4th Cir. 2015) .............................................................................. 20

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
2014 WL 939287 (N.D. Cal. Mar. 6, 2014) ............................................................... 22

*In re United States of America*,
985 F.2d 510 (11th Cir. 1993) ...................................................................................... 1, 19, 26

*In re United States*,
197 F.3d 310 (8th Cir. 1999) ........................................................................................ 1, 20, 26

*In re United States*,
542 F. App'x 944 (Fed. Cir. 2013) ........................................................................................ 20

*In re USA*,
624 F.3d 1368 (11th Cir. 2010) ........................................................................... 1, 19, 23, 26

*In Starr International Co. v. United States*,
121 Fed. Cl. 428 (Fed. Cl. 2015) ........................................................................................ 17

*Jarbo v. Cty. of Orange*,
2010 WL 3584440 (C.D. Cal. Aug. 30, 2010) ....................................................................... 19

*K.C.R. v. Cty. of Los Angeles*,
2014 WL 3434257 (C.D. Cal. July 11, 2014) ................................................................... 24, 25

*Kyle Engineering Co. v. Kleppe*,
600 F.2d 226 (9th Cir. 1979) ........................................................................................ 19, 24

*Lederman v. N.Y. City Dep't of Parks & Recreation*,
731 F.3d 199 (2d Cir. 2013) ......................................................................................... 19, 25

*Marllantas, Inc. v. Rodriguez*,
806 F. App'x 864 (11th Cir. 2020) ........................................................................................ 23

*Murray v. U.S. Dep't of Treasury*,
2010 WL 1980850 (E.D. Mich. May 18, 2010) ...................................................................... 20

*Nat'l Sec. Archive v. CIA*,
752 F.3d 460 (D.C. Cir. 2014) ............................................................................................. 24

*Partners, Inc. v. Twin City Fire Ins. Co.*,
310 F.R.D. 523 (S.D. Fla. 2015) .......................................................................................... 21

*Raymond v. City of New York*,
2020 WL 1067482 (S.D.N.Y. Mar. 5, 2020) ......................................................................... 25

*Reilly v. Chipotle Mexican Grill, Inc.*,
2016 WL 10644064 (S.D. Fla. Sept. 26, 2016) ..................................................................... 22

*Rembrandt Diagnostics, LP v. Innovacon, Inc.*,
2018 WL 692259 (S.D. Cal. Feb. 2, 2018) ........................................................................... 26

*RI, Inc. v. Gardner*,
2011 WL 4974834 (E.D.N.Y. Aug. 11, 2011) ....................................................................... 20

6

*Robertson v. McNeil-PPC Inc.*,
   2014 WL 12576817 (C.D. Cal. Jan. 13, 2014) ........................................................ 26

*Simplex Time Recorder Co. v. Sec'y of Labor*,
   766 F.2d 575 (D.C. Cir. 1985) ............................................................................... 20

*Spadaro v. City of Miramar*,
   2012 WL 3614202 (S.D. Fla. Aug. 21, 2012) ........................................................ 20

*Stelor Prods., Inc. v. Google, Inc.*,
   2008 WL 4218107 (S.D. Fla. Sept. 15, 2008) ........................................................ 21

*Sykes v. Brown*,
   90 F.R.D. 77 (E.D. Pa. 1981) ................................................................................. 24

*Thomas v. Cate*,
   2010 WL 1343789 (E.D. Cal. Apr. 5, 2010) ........................................................... 20

*United States v. Baine*,
   141 F.R.D. 332 (M.D. Ala. 1991) ........................................................................... 21

*United States v. Morgan*,
   313 U.S. 409 (1941) ............................................................................... 1, 9, 16, 23

*United States v. Wal-Mart Stores, Inc.*,
   2002 WL 562301 (D. Md. Mar. 29, 2002) .................................................. 24, 25, 26

*Walker v. NCNB Nat'l Bank of Fla.*,
   810 F. Supp. 11 (D.D.C. 1993) ............................................................................... 24

*Warren Bank v. Camp*,
   396 F.2d 52 (6th Cir. 1968) .................................................................................... 20

*Younes v. 7-Eleven, Inc.*,
   2015 WL 12844446 (D.N.J. Aug. 19, 2015) ........................................................... 26

*Zeleny v. Newsom*,
   2020 WL 3057467 (N.D. Cal. June 9, 2020) ........................................................... 21

**Statutes**

5 U.S.C. § 706(1) .......................................................................................................... 10

5 U.S.C. § 706(2) .......................................................................................................... 10

**Rules**

Fed. R. Civ. P. 45 .................................................................................................. *passim*

1

## **MEMORANDUM OF POINTS AND AUTHORITES**

2

### **INTRODUCTION**

3     Plaintiffs in an Administrative Procedure Act case seek to depose a former Cabinet

4 secretary—over the objection of the former secretary and the federal government—concerning her

5 mental impressions about agency adjudication and the development of agency policy while she

6 served as secretary.  Such a deposition is flatly prohibited under well-settled law and, if granted,

7 would undermine the separation of powers.  *See United States v. Morgan*, 313 U.S. 409, 422

8 (1941); *In re Dep't of Commerce*, 139 S. Ct. 16, 16-17 (2018).

9     Far from justifying this unprecedented deposition, Plaintiffs have even fallen well short of

10 the demanding standard that courts have long applied to compelled testimony from high-level (but

11 non-Cabinet level) officials in the federal government, local government, and even private

12 industry.  Plaintiffs have failed to show that Secretary DeVos has *any* material knowledge—much

13 less indispensable knowledge that cannot be obtained from another source.  Before serving the

14 subpoena, Plaintiffs failed, without justification, to take advantage of other available discovery

15 opportunities, including a fifth deposition of a fact witness, a Rule 30(b)(6) deposition, the

16 opportunity to request additional depositions, more targeted interrogatories, and document

17 discovery.  And they summarily rejected meet-and-confer opportunities offered by the

18 Government and intended to help Plaintiffs obtain through other means the information they say

19 they need.  One thing Plaintiffs have done, however, is wage a publicity campaign around their

20 subpoena.  Indeed, by all appearances, Plaintiffs seek this deposition not as an absolute necessity

21 to resolve their APA claim, but as a high-profile end in itself.  But regardless of their reasons and

22 tactics, the separation of powers and precedent require that Plaintiffs' subpoena be quashed.

23     Former Secretary of Education Elisabeth DeVos ("Movant") therefore respectfully

24 requests that, pursuant to Fed. R. Civ. P. 45(d)(1) and (d)(3)(A), the Court quash the deposition

25 subpoena served on her by Plaintiffs in *Sweet, et al. v. Cardona, et al.*, 3:19-cv-03674 (N.D. Cal.).

26

27

28

**STATEMENT OF FACTS**

**I.      The Court Authorizes Discovery in the *Sweet* Litigation on Specified Topics.**

In June 2019, a class of student loan borrowers ("Plaintiffs") filed a class action complaint in this Court against the Secretary of Education in her official capacity and the Department of Education (the "Department"; collectively, the "federal Defendants").  Plaintiffs brought two counts, alleging "unlawfully withheld and unreasonably delayed agency action" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and "arbitrary and capricious final agency action" under 5 U.S.C. § 706(2).  *See Sweet, et al. v. Cardona, et al.*, 3:19-cv-03674 (N.D. Cal.) (the "*Sweet* Litigation") Doc. 1 ¶¶ 377-404.  The Court dismissed the second count, *Sweet* Doc. 41, such that the only count remaining in the Complaint concerned alleged "agency action unlawfully withheld or unreasonably delayed" in processing applications for loan forgiveness.  5 U.S.C. § 706(1); Doc. 1 ¶¶ 378-79.  The Complaint did not assert any claim regarding the form of denials of applications.

In April 2020, the parties executed a settlement agreement, in which the Department agreed to issue final decisions on a timeline.  *Sweet* Doc. 97-2.  The Court preliminarily approved of the settlement in May 2020, *Sweet* Doc. 103, and the Department continued to issue borrower-defense decisions.  On September 17, 2020, Plaintiffs moved for final approval of the settlement and also to enforce it, claiming that certain denial notices provided insufficient reasoning.  *Sweet* Doc. 129.

After a fairness hearing, this Court withheld approval of the settlement agreement, directing that "[w]e will return to litigating the merits," finding "a strong showing of agency pretext," and stating "[w]e need to know what is really going on."  *Sweet* Doc. 146 at 11, 15.  The Court ordered extra-record discovery and directed that the Plaintiffs "shall move for summary judgment as to the lawfulness of the Secretary's delay…."  *Id.* at 7-10, 16.  The Court also directed that the Plaintiffs "shall move for summary judgment as to … the lawfulness of the perfunctory denial notice."  *Id.* at 16.  The Court permitted "five fact depositions of relevant decisionmakers" from offices "within the Office of the Under Secretary" and noted that "given '[h]eads of government agencies are not normally subject to deposition,' class counsel may not yet depose the Secretary."  *Id.* at 16.

9

**II.    Touting this Court as Having "Slammed" Secretary DeVos in its Order, Plaintiffs Seek to Depose Her with No Basis for Asserting that She Has Indispensable Knowledge and without Availing themselves of Available Discovery Authorized by the Court, Opportunities to Seek Additional Discovery, and Government Offers of Assistance.**

Plaintiffs took only four of the five authorized depositions and did not seek or take a Rule 30(b)(6) deposition.  Instead, on January 6, 2021, Plaintiffs informed the federal Defendants by telephone that they would seek to depose then-Secretary DeVos.  *Sweet* Doc. 171 at 5.  The next day, the federal Defendants requested from Plaintiffs "precisely the information that you seek to solicit from the Secretary that you have not been able to obtain elsewhere," and stated that they were "open to exploring other, less intrusive means of providing your requested discovery," including "a different deponent who might have relevant knowledge."  *Id.*  The federal Defendants also pointed out that the parties had seven days to work out any disputes on interrogatory responses.  *Id.*  Later that evening, Secretary DeVos announced her resignation, effective January 8, 2021.

Plaintiffs responded on Friday, January 8, asserting that prior depositions "left holes that can only be filled by Secretary DeVos's personal knowledge" on topics "including but not limited to" (1) "[t]he development and approval of" the form denial notices; (2) "[w]ho ordered FSA to stop issuing borrower defense decisions" and why; and (3) "Borrower Defense Policy."  *Id.* at 8-9.  Plaintiffs acknowledged that their first proposed topic was covered by an interrogatory that the federal Defendants still had time to amend, but stated that their desire to depose now-former Secretary DeVos "would not be satisfied by a more fulsome response."  *Id.* at 1 n.2, 9.

The federal Defendants responded on Monday, January 11, informing Plaintiffs that the Department was exploring whether it could provide the information Plaintiffs sought through less intrusive means.  *Id.* at 11.  The federal Defendants requested a "reasonable amount of time for the Department to continue this investigation."  *Id.*  Two-and-a-half hours later, Plaintiffs responded with a letter stating that they had "given you enough time to consider our request," and that "today we will move the Court."  *Id.* at 14.  About two hours later, Plaintiffs filed a letter brief with this Court seeking leave to depose former Secretary DeVos, *Sweet* Doc. 171, accompanied by a press

release from Plaintiffs' counsel. *See* Ex. 1. The press release described this Court as having "slammed" the Secretary in its order, and quotes Plaintiffs' counsel as stating the purpose of the deposition is to force former Secretary DeVos to meet a generalized "obligation to explain why defrauded student borrowers were ignored for years by the Education Department and then summarily denied their rights." *Id.* at 2-3.

On January 12, this Court issued an order stating that "given her new status [as a private citizen], if counsel pursues such deposition, it must subpoena Ms. DeVos." *Sweet* Doc. 172. On January 13, counsel for Plaintiffs asked the Department of Justice ("DOJ counsel") to accept email service of a third-party subpoena. Ex. 2 at 4.[2] Secretary DeVos authorized DOJ counsel to accept service on the condition that the parties "negotiate the subpoena's place of compliance and a reasonable compliance date that would allow sufficient time for motion-to-quash briefing and a decision." *Id.* at 3. The Plaintiffs agreed and stated they were "happy to negotiate a date that allows for briefing as necessary." *Id.* at 2; Ex. 3 at 1 ("we agree to the conditions set forth in your email"). The parties agreed that, in accordance with Rule 45, Plaintiffs would require compliance with the subpoena in Vero Beach, Florida, where Secretary DeVos maintains a residence and where she would be residing on the compliance date. Ex. 4 at 2. DOJ counsel explicitly noted that a motion to quash would be forthcoming, and the parties agreed "to stay any compliance date pending a final order" in order "to account for the significant possibility that necessary litigation [surrounding the Motion to Quash] will not be complete by February 25, 2021." Ex. 2 at 2; Ex. 3.

**III.  The Parties Agree that the Southern District of Florida Will Be the Place of Compliance, Secretary DeVos and the Federal Defendants Move to Quash, and Plaintiffs Move to Transfer.**

On February 8, 2021, Secretary DeVos and the federal Defendants jointly filed, in the Southern District of Florida, a motion to quash the subpoena. Doc. 1 ("Motion to Quash"). The

---

[2] Undersigned counsel represents Secretary DeVos in her personal capacity. DOJ counsel has stated that it represents the "former Secretary …in her official capacity … in light of DOJ's representation of the U.S. Department of Education in the underlying litigation and the government's interest in the information that former officials acquire during their time in government." Doc. 18 at 1 n.1.

motion argued that, pursuant to binding precedent, a former Cabinet secretary cannot be deposed under the circumstances presented here.  The matter was referred, without the consent of the parties, to a magistrate judge "for all pretrial matters for appropriate disposition."  Doc. 4.

Plaintiffs' response to the Motion to Quash was due on February 22.  In lieu of filing that paper, Plaintiffs, on February 11, filed a seventeen-page motion to transfer the matter to the California court.  Doc. 12 ("Motion to Transfer").  The motion, which addressed the substance of the Motion to Quash, argued that "exceptional circumstances" justified the transfer under Rule 45(f), and asked the Court provide expedited treatment in light of (1) an upcoming discovery hearing in this Court on February 24, and (2) the March 11 due date for the summary judgment motion.  *Id*. at 1.  Plaintiffs made this request despite their prior agreement to "allow[] for briefing as necessary" on the Motion to Quash and "to account for the significant possibility that necessary litigation will not be complete by February 25."  Ex. 2 at 2, 4.  The Motion to Transfer also asked that if expedited treatment was not granted, the due date for a response to the Motion to Quash be continued until after the Motion to Transfer was decided.  Doc. 12 at 17.

Movant filed her opposition, Docs. 18, 19, and requested "that any transfer not be executed until after Movants have had an opportunity to determine whether to seek appeal to the District Court pursuant to S.D. Fla. Local Magistrate Judge Rule 4(a)(1) within the 14 days allotted by that Local Rule."  Doc. 18 at 19 n.6.

For over a month, there was no decision from the magistrate judge.  During this period, Plaintiffs: (1) had their February 24 discovery hearing in this Court, during which the Court extended the discovery period and granted Plaintiffs additional document discovery on the very same topics on which they seek to depose Secretary DeVos, Ex. 5 at 31, *Sweet* Doc. 191; (2) had their summary judgment deadline postponed indefinitely, *Sweet* Doc. 191; and, (3) filed their opposition to the Motion to Quash, the deadline for which the SDFL magistrate judge had left in place, Doc. 23.  Movant replied in support of the Motion to Quash on March 1, 2021.  Docs. 26, 27.

In the meantime, Plaintiffs continued their publicity campaign about the subpoena. Counsel for Plaintiffs offered quotations for an article that referred to the "notoriously anti-

government transparency Southern District of Florida," that used an anonymous "source familiar with the litigation" to criticize the Motion to Quash, that claimed Secretary DeVos "long ago forfeited the benefit of … norms" that protect former Cabinet officials, and that criticized both undersigned counsel and DOJ counsel for defending the well-established legal principles barring abusive depositions of former Cabinet officials.  Plaintiffs feature this article on their publicity website for this case.  *See* Ex. 6.[3]

On April 7, 2021, the SDFL magistrate judge entered an order granting the Motion to Transfer.  Doc. 28 ("Transfer Order").  The magistrate judge did not address the request to stay the Transfer Order until Secretary DeVos could timely file objections and instead directed the Clerk to transfer the case immediately.  Doc. 28 at 12.  The docket states that with the posting of the Transfer Order the case was immediately closed and "electronically transferred out to California Northern."  *See In re Subpoena Served on Elisabeth DeVos*, Case No. 21-mc-14073 (S.D. Fla.), 04/07/2021 System Entry (docket entries hereinafter "SDFL Doc.").  The next day, April 8, this Court acknowledged receipt and placed the matter on its docket.  Doc. 29.

On April 8, Movant sought a stay from the SDFL district court on the grounds that (i) the purported immediate transfer denied her right to file objections pursuant to Rule 72(a) and raised a serious constitutional question regarding the permissibility of such a procedure under Article III; and (ii) the transfer order was erroneous on the merits.  SDFL Doc. 30.  On April 12, the district court denied the stay motion as moot.  SDFL Doc. 31.  On April 13, this Court entered an order directing that "[t]he parties shall update their briefing as necessary and to comply with the Civil Local Rules," with opening briefing due April 20 at noon.  Doc. 30.  On April 15, Movant filed a petition for a writ of mandamus and motion for a stay with the U.S. Court of Appeals for the

---

[3] In the underlying *Sweet* litigation, as soon as Secretary DeVos resigned, this Court ordered that the caption be updated to reflect the proper defendant in the case.  *See Sweet* Doc. 172 ("[T]he Department of Education shall please identify our new defendant. The Clerk shall then please update the caption.").  Plaintiffs, however, did not follow suit on their publicity website. The website still advertised the case—in bold, capital letters— as "Sweet v. DeVos," and it was only after Secretary DeVos noted this discrepancy, Doc. 19 at 6, that Plaintiffs updated their website.

1    Eleventh Circuit.  On April 16, the Court of Appeals entered an order directing a response to the

2    petition be filed no later than April 23, and denying a stay with leave to file a new motion "[s]hould

3    circumstances change."  Doc. 31-1 at 5-6.

4        On April 17, Secretary DeVos moved to stay these proceedings pending a resolution of her

5    petition for a writ of mandamus.  Doc. 31.  On April 19, this Court denied that request, finding

6    that, "[e]ven if the Court of Appeals for the Eleventh Circuit ruled that the matter should return to

7    Florida, there will be no harm in completing the briefing" on the Motion to Quash.  Doc. 32.

8                                  **LEGAL STANDARD**

9        The party issuing a subpoena must avoid "imposing undue burden or expense on a person

10   subject to the subpoena," and the "court for the district where compliance is required must enforce

11   this duty" and "must quash or modify a subpoena that … requires disclosure of privileged or other

12   protected matter … or … subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(1)(A), (d)(1),

13   (d)(3)(A)(iii)-(iv).  Because the subpoena here runs afoul of the doctrines preventing depositions

14   of Cabinet officials, it must be quashed under Rule 45.

15                                  **ARGUMENT**

16   **I.    Plaintiffs' Subpoena Must Be Quashed Under Longstanding Precedent Governing
        Compelled Testimony of Cabinet-Level Officials**.

17

18       Plaintiffs have explained that they seek to depose Secretary DeVos in order to probe her

19   mental processes regarding the development of policy and decisions relating to the adjudication of

20   applications for loan forgiveness.[4]  *See, e.g.*, Doc. 23 at 19, 27 (seeking "first-hand knowledge

21   regarding the reasons put forth for ED's decision"); *id.* at 27 (seeking testimony on "[t]hen-

22   Secretary DeVos's apparent directive of speed over substance"); *Sweet* Doc. 171 at 2, 3 (seeking

23

24           [4]  A threshold problem with Plaintiffs' subpoena is that they have not demonstrated Movant
25   actually possesses any of the information they seek or made any of the decisions they say were
     made.  Instead, as revealed by Plaintiffs' use of such phrasing as "Secretary DeVos' apparent
26   directive," Doc. 23 at 27, there is no actual support for their claims.  Plaintiffs use their own
     conclusory assertions that Secretary DeVos made certain decisions and issued certain orders to
27   justify deposing her about the decisions Plaintiffs claim that she made.

28

to question Secretary DeVos on "the *real* reasons for the delay," the "rationale for[] the delay," the "actual reasoning behind the stoppage," and about her alleged "hostility to the borrower defense program").[5]   Plaintiffs' counsel also asserted in a press release that Plaintiffs seek this deposition to have Secretary DeVos "explain why defrauded student borrowers were ignored for years by the Education Department and then summarily denied their rights."  Ex. 1 at 3.

Longstanding precedent prohibits such a deposition.   In *United States v. Morgan*, the Supreme Court addressed the appropriateness of a deposition during which the Secretary of Agriculture was "questioned at length regarding the process by which he reached the conclusions of his order, including the manner and extent of his study of the record and his consultation with subordinates."  313 U.S. at 421-22.  The Court held that "the Secretary should *never* have been subjected to this examination" because it is "not the function of the court to probe the mental processes of the Secretary."   *Id.* at 422 (emphasis added).  The Court explained:

> Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected.  It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

*Id.* (citations omitted).

The Supreme Court reaffirmed this principle three years ago in granting the Solicitor General's requested stay of a district court's order permitting the deposition of the Secretary of Commerce.  *See* Renewed Application for a Stay at 29-32, *In re Dep't of Commerce*, 139 S. Ct. 16 (2018) (No. 18A375) (citing *Morgan* and arguing that "in a challenge to an agency decision, it is 'not the function of the court to probe the mental processes of the Secretary'"); *In re Dep't of Commerce*, 139 S. Ct. at 16-17 (granting stay of order requiring deposition of Cabinet Secretary); *id.* at 17 (Gorsuch, J., concurring in part and dissenting in part) (deeming the district court's

---

[5]  Depositions of other officials have betrayed Plaintiffs' determination to probe the Secretary's mental processes. *See, e.g.*, Ex. 7 at 78:20-79:16 ("[What] caused [Secretary DeVos's] extreme displeasure?"), 227:21-230:7 ("Have you ever heard Ms. DeVos in your private meetings with her express these same sentiments?"); Ex. 8 at 69:20-70:4 ("After [the Secretary] signed this document, did you talk to her about her extreme displeasure?").

discovery order "highly unusual" and noting that the Supreme Court "stays Secretary Ross's deposition after weighing, among other things, the likelihood of review and the injury that could occur without a stay"); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019) (noting that even where extra-record discovery was justified in APA challenge, it "did not include the deposition of the Secretary"). As here, Plaintiffs sought the deposition because of alleged pretext, after the district court had allowed other discovery (itself highly unusual in an APA case) to proceed. Further, the issue of the decennial census was obviously one of fundamental importance. Nonetheless, the Supreme Court viewed the deposition of a Cabinet Secretary as a bridge too far and foreclosed it.

The relief that Plaintiffs seek thus appears to be unprecedented. Movant is unaware (and Plaintiffs have not identified) a single case that has departed from the *Morgan* rule and ordered a current or former Cabinet secretary to testify as to the purported "real reasons" for an agency's policy—much less for an agency's failure to take a particular action.[6] And for good reason.

Rooted in the separation of powers, various considerations warrant judicial solicitude for Cabinet officials and the unique role that they play under the Constitution and laws of the United States. Referred to twice in Article II, Cabinet secretaries serve as the president's direct designees for implementing the laws of the land within their departments, and the president "may require the Opinion, in writing, of the principal Officer in each of the executive Departments." U.S. Const., art. II, § 2, cl. 1. Cabinet secretaries are appointed by the president with the advice and consent of the Senate, are removable at will by the president, and have an enormous range of responsibilities on an extraordinary array of complicated issues. U.S. Const. art. II, § 2, cl. 2; *see also, e.g.*, 20

---

[6] In their SDFL brief, Plaintiffs claimed that two cases from the Court of Federal Claims support their position that a Cabinet secretary can be deposed, over objection, in a case like this one. Doc. 23 at 18 n.7. But neither case actually resulted in compelled testimony of a Cabinet secretary over objection. In *Energy Capital Corp. v. United States*, 60 Fed. Cl. 315 (Fed. Cl. 2004), the party seeking the deposition withdrew the relevant motion before any deposition occurred, and thus the order was mooted and not appealed. *See* Ex. 9. In *Starr International Co. v. United States*, 121 Fed. Cl. 428 (Fed. Cl. 2015), the former Cabinet secretaries (Paulson and Geithner) did not object to testifying and therefore the court issued no orders on the subject. In any event, the claims and issues that arise in Court of Federal Claims cases are nothing like those that arise in APA cases, and therefore the constitutional implications would be far different.

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA

U.S.C. § 3411.  Other than the president and the courts, Cabinet secretaries are the only officials the Constitution vests with the authority to appoint inferior officials.  U.S. Const., art.  II, § 2, cl. 2.  Accordingly, compelling the testimony of the "principal Officer[s]" of the Executive Branch Departments regarding their mental processes would unduly expand the role of the Judiciary in evaluating the exercise of authority that the Constitution vests in another branch, and would invite an unseemly and inappropriate clash between two coordinate branches of government.  *Morgan*, 313 U.S. at 421-22.

Moreover, because "Heads of Departments" have such vast responsibilities, they must invariably depend on subordinates for information and to exercise executive authority on their behalf.  As a result, department heads will virtually never be the sole source of information on a question of agency action.  *Cf. First Resort, Inc. v. Herrera*, No. 11-5534, 2014 WL 589054, at *7 (N.D. Cal. Feb. 14, 2014) ("In this case, the court is not persuaded that the City Attorney has any such first-hand knowledge.  The more likely scenario is that any knowledge the City Attorney has regarding the claims being litigated derives from briefing provided by support staff, summaries from counsel handling the litigation on a day-to-day basis, or other outside sources.  This falls short of the first-hand knowledge which could potentially justify his deposition, however brief, in this case").

Additionally, the constitutional stature and national profile of Cabinet officials, and their close identification with the president, invites litigants to target them for harassment that would only be further intensified by permitting compelled testimony.  This case provides a good example.  Plaintiffs have subordinated other discovery opportunities to secure information they claim to need so that they can focus exclusively on this deposition—a deposition request that they repeatedly air in the press, with inflammatory rhetoric.  *See, e.g.*, Ex. 1 (press release stating that "Judge William Alsup has already slammed DeVos'" actions); Ex. 6 (while Motion to Quash was pending in the SDFL, Plaintiffs' publicity website displaying article that describes court as the "notoriously anti-government transparency Southern District of Florida," that used an anonymous "source familiar with the litigation" to criticize the Motion to Quash, that claimed Secretary DeVos "long ago forfeited the benefit of … norms" that protect former Cabinet officials, and that criticized

1    undersigned counsel and DOJ counsel for defending *Morgan* doctrine).   Indeed, Plaintiffs have

2    candidly admitted that they will "not be satisfied" by anything short of a deposition of Secretary

3    DeVos, *Sweet* Doc. 171 at 1 & n.2, 9, and have rushed this subpoena, *id.* at 14 (stating Plaintiffs

4    have "given you enough time"), instead of taking other discovery.

5           For all these reasons and more, the Supreme Court has held that the Judiciary must take

6    special care to avoid probing the mental processes of the officials the Constitution designates as

7    "Principal officers" of the United States.   This case is no exception and the subpoena should be

8    quashed.

9    **II.     Plaintiffs Have Failed to Demonstrate Extraordinary Circumstances under the Apex**
            **Doctrine.**

10

11          Plaintiffs contend that they may depose Secretary DeVos because they have demonstrated

12   "extraordinary circumstances"—namely that she has necessary information that cannot be

13   obtained from any other source.   This test is drawn from what has become known as the "apex

14   doctrine," which shields high-level government officials from deposition.   As an initial matter, the

15   Supreme Court has never held that this test applies to *Cabinet* officials.   As noted, the Court has

16   instead held that a deposition to probe the mental processes of a Cabinet official involved in

17   adjudication or policymaking should "never" occur, and it recently took extraordinary action to

18   prevent such a deposition in a case *exactly* like this one—i.e., where a district court had made a

19   finding of agency pretext in an APA case and permitted extra-record discovery.

20          But even assuming the "extraordinary circumstances" test of the apex doctrine applies,

21   Plaintiffs have not come close to meeting it.

22          **1.      Plaintiffs Have Not Demonstrated Extraordinary Circumstances.**

23          A "district court should rarely, if ever, compel the attendance of a high-ranking official in

24   a judicial proceeding."   *In re USA*, 624 F.3d 1368, 1376 (11th Cir. 2010); *see also In re United*

25   *States*, 985 F.2d 510, 512 (11th Cir. 1993) (requiring "extraordinary circumstances"); *see also*

26   *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government

27   agencies are not normally subject to deposition."); *Jarbo v. Cty. of Orange*, No. 05-00202, 2010

28   WL 3584440, at *1 (C.D. Cal. Aug. 30, 2010) ("Courts have recognized that high-ranking public

1   officials should not, absent extraordinary circumstances, be called to testify regarding their reasons

2   for taking official actions."). The law is the same in every circuit court of appeals to have

3   addressed the issue. *See, e.g., Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)

4   ("[A]bsent extraordinary circumstances," high government officials should not be deposed

5   "regarding their reasons for taking official action"); *Lederman v. N.Y. City Dep't of Parks &*

6   *Recreation*, 731 F.3d 199, 204 (2d Cir. 2013); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th

7   Cir. 1991); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *Warren Bank v. Camp*, 396 F.2d 52,

8   56-57 (6th Cir. 1968); *Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009); *In re United States*,

9   197 F.3d 310, 313-14 (8th Cir. 1999); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575,

10   586 (D.C. Cir. 1985); *In re United States*, 542 F. App'x 944, 947 (Fed. Cir. 2013). Accordingly,

11   courts routinely prohibit depositions like the one requested here.[7]

12        Plaintiffs' claims as to why their case is the "rare[], if ever," "extraordinary" exception

13   cannot withstand scrutiny. It is not enough to show that a high-ranking official might have relevant

14   information; the subpoenaing party must show the official possesses information that is "essential"

15   and "not obtainable from another source." *In re United States*, 197 F.3d at 314; *see also Thomas*

16   *v. Cate*, No. 105CV01198LJOJMDHC, 2010 WL 1343789, at *2 (E.D. Cal. Apr. 5, 2010)

17   ("Petitioner has not demonstrated that the information he seeks from Mr. Siggins is not available

18   from other sources"). Plaintiffs do not even come close to meeting this requirement.

19        After they issued their subpoena, Plaintiffs claimed in the Florida court that *only* Secretary

20   DeVos has "the answer to what was 'really going on'" with borrower-defense decisions. Doc. 23

21   ─────────────────

22        [7] *See, e.g., In re McCarthy*, 636 F. App'x 142, 145 (4th Cir. 2015) (disallowing deposition
     of EPA Administrator); *In re United States (Holder)*, 197 F.3d at 316 (disallowing deposition of

23   Attorney General and Deputy Attorney General); *A.R. v. Dudek*, No. 12-60460-CIV, 2016 WL
     3753706, at *2 (S.D. Fla. Apr. 8, 2016) (disallowing deposition of Secretary of the Florida Agency

24   for Health Care Administration); *Spadaro v. City of Miramar*, No. 11-61607-CIV, 2012 WL
     3614202, at *4 (S.D. Fla. Aug. 21, 2012) (disallowing deposition of chief of police and assistant

25   chief of police); *Hernandez v. Tex. Dep't of Aging & Disability Servs.*, No. 11-856, 2011 WL
     6300852, at *4 (W.D. Tex. Dec. 16, 2011) (disallowing deposition of Texas governor); *RI, Inc. v.*

26   *Gardner*, No. 10-1795, 2011 WL 4974834, at *3 (E.D.N.Y. Aug. 11, 2011) (disallowing
     deposition of Solicitor of Labor); *Murray v. U.S. Dep't of Treasury*, No. 08-15147, 2010 WL

27   1980850, at *6 (E.D. Mich. May 18, 2010) (disallowing deposition of Treasury Secretary); *see*
     *also infra* at pp. 21-22 (citing cases disallowing depositions of former officials).

28

─────────────────

at 19; *see also id.* at 17, 29 ("Ms. DeVos has unique knowledge"); *id.* at 29 (claiming only Secretary DeVos "has knowledge of the facts Plaintiffs seek"). Yet, just two days later, the Plaintiffs told this Court: "the reason why we are ***seeking these documents*** is because discovery so far hasn't been able to clearly answer one of the main questions at the center of this case which is how and why it came to be that the Department of Education stopped issuing Borrower Defense decisions." Ex. 5 at 3:16-20; *see also id.* at 4:11-13 ("all of this, Your Honor, goes directly to the question of pretext which … is a key concern"). In other words, Plaintiffs themselves admitted that there were other available avenues *after* issuing their subpoena, even as they told the opposite story to the Florida court. This course of action was inconsistent with both the apex doctrine and Rule 45. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

In addition to failing to disclose the alternative of document discovery, Plaintiffs have no real answer as to why they served the subpoena before: (1) exhausting the depositions available to them or seeking a Rule 30(b)(6) deposition; (2) exhausting the interrogatories available to them; or (3) propounding even a single request for admission. This failure to exhaust (or even seriously pursue) alternative discovery is dispositive. *See Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (a party seeking an apex deposition must "establish that ... other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success" (quoting *Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014)); *Zeleny v. Newsom*, No. 17-cv-07357, 2020 WL 3057467, at *3 (N.D. Cal. June 9, 2020) (in applying the apex doctrine, courts consider "whether the party seeking the deposition has exhausted other less intrusive discovery methods").[8]

---

[8] *See also Dudek*, 2016 WL 3753706, at *2 (disallowing deposition where the propounding party "did not sufficiently establish that [the information sought] is not available through less burdensome means, such as an interrogatory"); *Cruz v. Green*, No. 18-60995-CIV, 2019 WL 5208913, at *4 (S.D. Fla. Feb. 7, 2019) (denying a deposition because the plaintiff "has not yet deposed other officials or officers"); *City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2012 WL 760743, at *4, *5 (S.D. Fla. Mar. 7, 2012) ("[Apex] discovery is permitted only where it is

1    Plaintiffs have no credible response.  First, they assert that the meager discovery efforts

2  they engaged in before resorting to this extraordinary subpoena "satisfied" their "basic obligation."

3  Doc. 23 at 28.  Ignoring the many cases that say exhaustion is an absolute requirement, they cite

4  three cases for the notion that minimal efforts suffice.  *Id.* at 27-28.  But those cases say no such

5  thing and deem exhaustion an important consideration.  Further, they involve a fast food executive,

6  an airline executive, and a district attorney[9]—not an attempt to probe the mental processes of a

7  Cabinet secretary.

8    Second, Plaintiffs offer, without citation, various conclusory assertions about Secretary

9  DeVos' purported knowledge.  *See* Doc. 23 at 28 ("all signs point to Ms. DeVos as the last possible

10  source of this information"); *id.* at 27 (citing nothing for allegation regarding "Secretary DeVos's

11  apparent directive of speed over substance").  But ipse dixit is not enough to satisfy the apex

12  doctrine.

13    Third, Plaintiffs misleadingly cite snippets of deposition testimony to suggest that

14  deponents have identified Secretary DeVos as a unique source of information.  If anything, the

15  opposite is true.  *See* Doc. 23 at 22 (quoting Jones testimony that "there's **lots of people** who could

16  have" decisionmaking authority regarding *Calvillo Manriquez* injunction) (emphasis added)[10]; *id.*

17

18  shown that other persons cannot provide the necessary information." (quoting *Bogan*, 489 F.3d at
    423)), *4 (denying deposition because "Plaintiffs never attempted to obtain the information sought

19  through a Rule 30(b)(6) deposition of the City's representative" and "never served on the City any
    interrogatories or requests for production of documents"); *Stelor Prods., Inc. v. Google, Inc.*, No.

20  05-80387-CIV, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008) (an apex "deposition will not
    be allowed 'where the information is obtainable through interrogatories ... or [the deposition] of a

21  designated spokesperson[.]'" (alterations in original) (quoting *United States v. Baine*, 141 F.R.D.
    332, 334 (M.D. Ala. 1991)); *Apple Inc. v. Corellium, LLC*, No. 19-81160, 2020 WL 1849404, at

22  *3 (S.D. Fla. Apr. 13, 2020) (same).

23    [9] *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-civ-23425, 2016, WL 10644064, at *5-7
    (S.D. Fla. Sept. 26, 2016) (chief creative and development officer of Chipotle Mexican Grill); *In*

24  *re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-cv-05634, 2014 WL 939287, at *1
    (N.D. Cal. Mar. 6, 2014) (CEO of All Nippon Airways); *Eng v. Cty. of Los Angeles*, No. 05-cv-

25  2686, 2007 WL 9729101, at *1, 7-8 (C.D. Cal. Apr. 5, 2007) (district attorney).

26    [10] Plaintiffs have misleadingly suggested that "Under Secretary [Jones] said someone more
    'senior' than her made the decision" and that this could be "one of only two people."  Doc. 23 at

27  23.  Here is what Under Secretary Jones actually said: "**A:** … I am not a senior enough official to
    have decision-making authority.  **Q:** … [S]o who would have decision-making authority to -- if

28

21

at 24 (quoting Jones testimony that "I do not know" who made "chilling effect" decision); *id.* (quoting Manning testimony that "I would expect that [Secretary DeVos would] be ***briefed by others***") (emphasis added)[11]; *id.* at 26 (quoting Nevin response to question of whether she knew reasons for denial of additional staffing: "That's above my pay grade.  I don't know."). Plaintiffs have not, and cannot, point to a single piece of discovery that shows Secretary DeVos has unique knowledge about the topics they allege are essential to resolving the single remaining claim in their case when they issued the subpoena.

### 2. High-Ranking Officials Do Not Lose Morgan and Apex Doctrine Protections Upon Leaving Office.

Plaintiffs contend that the protections of *Morgan* and the apex doctrine evaporate the moment an official leaves office.  Doc. 17 at 15-17.  This notion has no basis in law, and courts have routinely rejected it.  To understand why, it is necessary to examine the rationales that underlie the doctrine.

First, as *Morgan* made clear, subjecting high-ranking agency officials—and especially Cabinet secretaries who report directly to the president—to judicial examination threatens the separation of powers between "collaborative instrumentalities of justice," and the "appropriate independence of each should be respected by the other."  *Morgan*, 313 U.S. at 422; *see also In re USA*, 624 F.3d at 1372-73 ("the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers," and the higher the rank, the "more substantial" the threat); *Marllantas, Inc. v. Rodriguez*, 806 F. App'x 864, 867 (11th Cir. 2020) ("[J]udicial inquiry into executive motivation represents a substantial intrusion into the workings of another Branch of Government[.]").  As Plaintiffs admit, they seek to probe Secretary

not you?  **A:** I think that's what I'm trying to tell you is that I – I – I – ***there's lots of people who could have it***.  I don't know who made all the decisions, but I do know it wasn't me."  Ex. 9 at 182:20-183:7 (emphasis added).

[11] Plaintiffs have claimed that Manning confirmed the "chilling effect" policy "would have been connected to Ms. DeVos even more directly," but all Manning said was "I expect the Secretary has that authority," not that she exercised it, and not that she is the only one with knowledge of that policy (indeed, he says "others" would have been involved, "including [the] general counsel").  Doc. 23 at 24.

DeVos's alleged motivations during her tenure as Secretary, Doc. 24 at 10 (stating her "personal knowledge did not magically disappear on the day that she resigned her position"), so nothing about her now "former" status alleviates this constitutional concern.

Second, "subjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial." *Walker v. NCNB Nat'l Bank of Fla.*, 810 F. Supp. 11, 12 (D.D.C. 1993). *See also Sykes v. Brown*, 90 F.R.D. 77, 78 (E.D. Pa. 1981) ("Persons in such positions routinely make administrative decisions in the exercise of their discretionary powers, which may affect many. Lawsuits often follow. Should the agency head be subject to deposition in every resulting case and be repeatedly required to explain the various mental steps he took to reach his decision, the decision may be his last.") (citing *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979)); *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806, 2014 WL 3434257, at *5 (C.D. Cal. July 11, 2014) (noting that the apex doctrine is designed "to protect the officials from unwarranted inquiries into their decisionmaking process"); *Coleman v. Schwarzenegger*, No. S-90-0520, 2008 WL 4300437, at *2 (E.D. Cal. Sept. 15, 2008) (same). This interest no more dissipates after an official resigns, than does the privilege over attorney-client communications after the attorney withdraws from the representation, or does the Executive Branch's deliberative-process privilege after a resignation. *See Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971) (recognizing the attorney-client privilege "outlasts the lawyer's employment"); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464-65 (D.C. Cir. 2014) (holding the deliberative-process privilege does not "evaporate[] over time").

Third, allowing depositions of high-ranking Government officials would create "a tremendous potential for abuse or harassment." *Apple, Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. 05-4374, 2007 WL 205067, *3 (N.D. Cal. 2007). This rationale applies to "[h]eads of government agencies in particular." *K.C.R. v. County of Los Angeles*, No. 13-3806, 2014 WL 3434257, *3 (C.D. Cal. 2014); *see also Gray v. Kohl*, No. 07-10024, 2008 WL 1803643, at *1 (S.D. Fla. Apr. 21, 2008) ("[Courts] generally restrict  parties from deposing high ranking officials lacking

personal knowledge of the issues being litigated because they are 'vulnerable to numerous, repetitive, harassing, and abusive depositions.'"). Such harassment and abuse "would likely discourage [people] from accepting positions as public servants." *United States v. Wal-Mart Stores, Inc.*, No. 01-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002). As this case demonstrates, for Secretary DeVos, these concerns became real, not theoretical, the very moment she left office. *See id.* (if former officials are not protected, "such public servants should very well expect a mailbag full of deposition subpoenas on the day they depart office"). Plaintiffs have treated deposing Secretary DeVos as an end in itself—skipping over other, standard discovery to propound this subpoena—and coupling their litigation efforts with a media campaign. If this Court obliges this abuse, and becomes perhaps the first in the nation to permit a deposition of a Cabinet secretary in an APA case, more such requests will surely follow, as Cabinet secretaries are routinely named as official capacity defendants in such litigation, or are otherwise brought into agency litigation, even after they leave office.[12] *See e.g.*, *In re Clinton*, 973 F.3d 106 (D.C. Cir. 2020) (granting writ of mandamus to prohibit deposition of former Secretary of State Clinton's "motives behind private email use" for public business).

These rationales explain why the Department of Justice has continuously—across administrations and cases—firmly defended the *Morgan* principle, and continues to do so here. And these rationales explain why courts have recognized that *Morgan* and the apex doctrine apply fully to high-ranking public officials after they leave office with respect to depositions about their decisionmaking while in office. *See, e.g., K.C.R.*, 2014 WL 3434257, at *5 (prohibiting deposition of former undersheriff); *Lederman*, 731 F.3d at 20 (prohibiting deposition of former deputy mayor); *Raymond v. City of New York*, No. 15-6885, 2020 WL 1067482, at *6 (S.D.N.Y. Mar. 5, 2020) (prohibiting deposition of former police commissioners); *Cruz*, 2019 WL5208913, at *4 (prohibiting deposition of former sheriff); *Buckler v. Israel*, No. 13-62074, 2014 WL 7777678, at *2 (S.D. Fla. Nov. 13, 2014) (same); *City of Fort Lauderdale*, 2012 WL 760743, at

---

[12] For example, a review of PACER reveals that during Secretary DeVos's tenure, the Department was sued nearly 200 times, with Secretary DeVos named as an official-capacity defendant in at least 47 cases, and with at least 48 cases still pending. *See* Panuccio Decl. at ¶ 11.

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA

*5 (prohibiting deposition of former city manager); *Wal-Mart*, 2002 WL 562301, at *5 (prohibiting deposition of former chair of consumer product safety commission); *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 15-00752, 2015 WL 5602342, at *5 (D.D.C. Sept. 24, 2015) (prohibiting the deposition of former FDIC chair and senior deputy director).[13]  The "integrity of administrative proceedings and the underlying decisionmaking process of agency officials [is] just as important where the official to be questioned no longer serves in the same position," *Galan-Alvarez*, 2015 WL 5602342, at *4, and a contrary rule "would serve as a significant deterrent to qualified candidates for public service," *City of Fort Lauderdale*, 2012 WL 760743, at *2.  In short, "[i]f the immunity *Morgan* affords is to have any meaning, the protections must continue upon the official's departure from public service." *Wal-Mart*, 2002 WL 562301, at *3.[14]

## **CONCLUSION**

For the foregoing reasons, Movant respectfully requests that this Court quash the Rule 45 deposition subpoena served upon her by Plaintiffs.  Should the Court deny this motion, Movant requests that the Court stay compliance with the subpoena to permit orderly review of a petition for a writ of mandamus.  *See In re United States of America*, 985 F.2d 510, 512 (11th Cir. 1993) (granting mandamus petition after district court denied motion to quash subpoena of FDA

---

[13] *See also Horne v. Sch. Bd. of Miami-Dade Cty.*, 901 So. 2d 238, 241 (Fla. 1st DCA 2005) ("the rule prescribing that agency heads and other high-ranking officials should not be compelled to testify . . . is equally applicable to former agency heads and high-ranking officials in circumstances . . . involving past official conduct"); *Arnold Agency v. W. Va. Lottery Comm'n*, 526 S.E.2d 814, 830 (W. Va. 1999) ("Former high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation.  That interest obviously survives leaving office.  Thus, the standard . . . continues to apply in instances where a party seeks to orally depose a former high-ranking government official….").

[14] Far from losing vitality after an official leaves office, the apex doctrine even applies to former *corporate* officials, to whom none of the constitutional concerns attach.  *See, e.g.*, *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640727, at *1-2 (S.D. Fla. Aug. 31, 2017); *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-0698, 2018 WL 692259, at *6-7 (S.D. Cal. Feb. 2, 2018); *Younes v. 7-Eleven, Inc.*, No. 13-3500, 2015 WL 12844446, at *1-2 (D.N.J. Aug. 19, 2015); *Robertson v. McNeil-PPC Inc.*, No. 11-09050, 2014 WL 12576817, at *15-17 (C.D. Cal. Jan. 13, 2014); *Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 WL 2517133, at *1, *4 (D.N.J. June 23, 2011); *Gauthier v. Union Pac. R. Co.*, No. 07-12, 2008 WL 2467016, at *1, *4 (E.D. Tex. June 18, 2008); *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 177-79 (Tex. 2000).

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA

commissioner); *In re United States*, 197 F.3d 310, 316  (8th Cir. 1999) (granting mandamus petition after district court denied motion to quash subpoena of Attorney General and Deputy Attorney General); *In re: USA*, 624 F.3d 1368, 1377  (11th Cir. 2010) (granting mandamus petition after district court ordered testimony of Cabinet official); *In re Dep't of Commerce*, 139 S Ct. at 16-17 (granting stay pending review of mandamus petition after distirct court order compelling deposition of Cabinet official in agency pretext case).

Dated: April 20, 2021                                 Respectfully submitted,


                                                      /s/  *Jesse Panuccio*
                                                      Jesse Panuccio
                                                      jpanuccio@bsfllp.com
                                                      BOIES SCHILLER FLEXNER LLP
                                                      401 E. Las Olas Blvd., Ste. 1200
                                                      Fort Lauderdale, FL  33301
                                                      Telephone: (954) 356-0011

                                                      Counsel for Elisabeth DeVos

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the Northern District of California by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Jesse Panuccio*
Jesse Panuccio

MOTION TO QUASH RULE 45 SUBPOENA, Case No.: MC 21-80075 WHA